A06A1084. DASHER v. THE STATE.
(636 SE2d 83)

MILLER, Judge.

A Lowndes County jury found Anthony Lamar Dasher guilty of two counts of kidnapping, two counts of impersonating an officer, and one count each of aggravated sodomy, attempted aggravated sodomy, aggravated assault, and rape. On appeal, Dasher contends that the trial court erred in (i) denying his motions for a directed verdict of acquittal, (ii) instructing the jury that they may consider the level of

---

certainty shown by the witnesses in their identification of Dasher, (iii) refusing to charge the jury on the definition of simple assault, and (iv) failing to merge the kidnapping counts with the aggravated assault and rape counts for purposes of sentencing. We find no reversible error and affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on the evening of February 3, 2002, T. H. accepted a ride from a man she met at a nightclub who drove a green Monte Carlo and offered to take her to have her flat tire repaired. The man asked T. H. what she would charge for oral sex, and she told him that "I don't do that kind of stuff," and asked him to take her back to the nightclub. The man then told T. H. that he was a police officer, and that she was under arrest for prostitution. T. H. believed the man was a police officer because there appeared to be a police radio in the car, and the man spoke into the receiver and said that he was "transporting a white female . . . to the county jail."

The man then drove to a dirt road and stopped the car. He asked T. H. if she had ever had anal sex. She told him no, and that she "couldn't do this." He replied, "well, you're going to do it tonight." He told her to put a condom on him, and she complied. He then told T. H. to turn around and put her stomach to the back of the seat. T. H. again complied, although she testified that she did not want to have sex, that she was scared, that she did not know where she was or what the man might do to her, and that she felt like she had no other choice but to go along with his requests. After the man tried unsuccessfully to penetrate her, she screamed for him to stop, and he ordered her back into the car. He told her not to tell anyone because "every officer wouldn't give you a chance to help yourself like this," and he then drove T. H. to her friend's house. T. H. later identified the man as Dasher.

On the evening of April 8, 2002, C. G. accepted a ride from a man driving a green Monte Carlo. The man told C. G. that she was under arrest for soliciting. C. G. began crying and asked the man not to take her to jail. He told her that "I won't take you to jail if you do the things I ask you to do." The man stopped the car on a dirt road, and C. G. got out of the car and ran. The man ran after her, talking into what appeared to be a radio, saying "suspect is running, suspect is running." C. G. believed the man to be a police officer and stopped running.

After they went back to the car, C. G. was shaking and crying. The man told C. G. that she was going to do what he told her to do. He made C. G. perform oral sex on him, and then he had sexual intercourse with her. C. G. later identified the man as Dasher.

When Dasher was arrested, he was driving a Honda Passport. Between February and July 2002, however, Dasher was living with

his aunt and drove her green Monte Carlo. Police found a radar detector, a police scanner, two badge holders, and a blue light in Dasher's Honda.

The State also presented the testimony of Willie Hollis, who knew Dasher from school and was his cell mate in July 2002. Dasher told Hollis that he would "pretend like he was a police officer, to . . . get sex from the women."

1. Dasher contends that the trial court erred in denying his motions for a directed verdict of acquittal as to the charges of (i) aggravated assault of T. H., (ii) attempted aggravated sodomy of T. H., (iii) kidnapping of T. H., (iv) rape of C. G., (v) aggravated sodomy of C. G., and (vi) kidnapping of C. G. We disagree.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

(Footnote omitted.) *Flores v. State*, 277 Ga. App. 211, 212 (3) (626 SE2d 181) (2006).

(a) Dasher contends that the evidence is insufficient to show force, and that the trial court therefore erred in denying his motions for a directed verdict on the charges of rape, aggravated sodomy, aggravated assault, and attempted aggravated sodomy. We disagree.

Rape requires the carnal knowledge of the victim "forcibly and against her will." OCGA § 16-6-1 (a) (1). Aggravated sodomy is committed "with force and against the will" of the victim. OCGA § 16-6-2 (a) (2). Although the evidence does not show that Dasher used physical force to ensure the victims' compliance with his demands, "[i]ntimidation may substitute for force." *Curtis v. State*, 236 Ga. 362 (1) (223 SE2d 721) (1976). "The element of force is shown if the defendant's words or acts were sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to herself or others." (Punctuation and footnote omitted.) *State v. Collins*, 270 Ga. 42, 45 (508 SE2d 390) (1998). Furthermore, a victim's lack of resistance induced by fear authorizes a finding of force. *Ingram v. State*, 211 Ga. App. 252, 254 (2) (438 SE2d 708) (1993). "Force may be proved by direct or circumstantial evidence." (Citation and punctuation omitted.) *Gibbins v. State*, 229 Ga. App. 896, 898 (1) (495 SE2d 46) (1997).

Evidence showed that Dasher, by posing as a police officer and driving the victims to remote locations where they were unlikely to receive any assistance, used fear and intimidation to ensure that his victims would cooperate. While Dasher did not tell the victims that failure to comply would result in physical harm, a trier of fact could conclude that Dasher's words and actions were sufficient to instill in his victims a reasonable apprehension of dangerous consequences if they resisted his demands. See *Collins*, supra, 270 Ga. at 45. Accordingly, the evidence sufficed to show that Dasher's acts were forcible, and any reasonable trier of fact could find Dasher guilty beyond a reasonable doubt of the crimes of attempted aggravated sodomy of T. H., aggravated assault of T. H., rape of C. G., and aggravated sodomy of C. G.

(b) Dasher contends that the evidence was insufficient to support the kidnapping convictions because there was no evidence that the victims were transported against their will. We disagree.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against [her] will." OCGA § 16-5-40 (a). Although both victims willingly got into Dasher's car, evidence shows that after the victims pleaded to be let go, Dasher refused and continued driving them to a remote location. "Although the victim got in appellant's car voluntarily, once he refused to let her out of the car and held her against her will, a kidnapping occurred." (Citation omitted.) *Helton v. State*, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983). We conclude that any rational trier of fact could find Dasher guilty beyond a reasonable doubt of kidnapping T. H. and C. G.

The trial court did not err in denying Dasher's motions for a directed verdict of acquittal.

2. Dasher claims that the trial court erred in charging the jury that in assessing identification testimony they may consider "the level of certainty shown by the witness about his or her identification." In *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005), our Supreme Court held that it is error to give this charge. We hold, however, that the giving of the charge here did not result in reversible error.

In *Brodes*, the charging error was determined to be harmful because the only evidence connecting the defendant to the crimes was the eyewitness testimony of the two victims. Id. Here, in contrast, substantial evidence other than eyewitness testimony connects Dasher to the crimes charged. This evidence includes the police-related items discovered in Dasher's car, Dasher's access to a green Monte Carlo automobile, and the testimony of Dasher's cell mate.

In view of the substantial evidence other than eyewitness testimony that pointed to Dasher as the perpetrator of the crimes against

T. H. and C. G., the trial court's error in giving the "level of certainty" portion of the identity charge was harmless. *Joyner v. State*, 278 Ga. App. 60, 63 (3) (628 SE2d 186) (2006) ("level of certainty" charge harmless in view of other evidence connecting defendant to the crimes).

3. Dasher claims that the trial court erred in failing to charge the definition of simple assault, as requested by defense counsel, in conjunction with the charge on aggravated assault. We disagree. "There is no merit in appellant's contention that a charge on simple assault must be given in order to complete the definition of aggravated assault. The latter does not need the former to make it complete." (Citations omitted.) *Sutton v. State*, 245 Ga. 192, 193 (2) (264 SE2d 184) (1980).

4. Dasher further claims that the crime of kidnapping T. H. was included within the crime of aggravated assault of T. H.; that the crime of kidnapping C. G. was included within the crime of raping C. G.; and that the trial court therefore erred in failing to merge the kidnapping counts with these other crimes for sentencing purposes. We disagree.

> In determining whether a crime is established by proof of the same or less than all the facts required to establish the commission of another crime within the meaning of OCGA § 16-1-6, we look to the actual evidence introduced at trial. If the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6.

(Citation and punctuation omitted.) *Dawson v. State*, 203 Ga. App. 146, 147 (2) (416 SE2d 125) (1992). "[K]idnapping is not a continuous crime; it is completed when the victim has been seized and asported to some degree." (Citation omitted.) *Robinson v. State*, 210 Ga. App. 175, 176 (2) (435 SE2d 466) (1993). Evidence shows that the kidnapping of T. H. was complete when Dasher refused to take her back to the nightclub and continued driving to the dirt road. The crime of aggravated assault was established when Dasher forced T. H. from his car and attempted to rape her. OCGA § 16-5-21. Since the crimes were established by different facts, they constituted separate offenses. See *Robinson*, supra, 210 Ga. App. at 176-177 (2) (crimes of kidnapping and aggravated battery did not merge because they were established by different facts).

The kidnapping of C. G. was completed when Dasher locked her in the car and drove her to a remote location against her will. The rape of C. G. was established when Dasher coerced her into having sexual

intercourse. Accordingly, the kidnapping of C. G. and the rape of C. G. were separate offenses. See *Robinson*, supra, 210 Ga. App. at 176-177 (2).

Since the crimes did not merge as a matter of fact, the trial court did not err in refusing to merge the kidnapping counts into the aggravated assault and rape counts for purposes of sentencing. See *Strozier v. State*, 171 Ga. App. 703, 706 (4) (320 SE2d 764) (1984).

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 29, 2006 — 

*J. Converse Bright*, for appellant.

*J. David Miller, District Attorney, Bradfield M. Shealy, Tracy K. Chapman, Assistant District Attorneys*, for appellee.