A08A0584. DAVIS v. THE STATE.
(666 SE2d 56)

MILLER, Judge.

A Lowndes County jury found Calvin Jerome Davis guilty of rape, kidnapping, armed robbery, and three counts of possession of a firearm during the commission of a crime. On appeal, Davis claims that the trial court erred in (i) denying his motion for a directed verdict of acquittal, (ii) admitting his in-custody statements to police, (iii) failing to charge the jury on his theory of the case, (iv) admitting hearsay evidence, (v) allowing testimony based on statements not produced to the defense during discovery, and (vi) improperly charging the jury on the crime of conspiracy. Davis also contends that he received ineffective assistance of trial counsel. For the reasons set forth below, we find no error and affirm.

> The standard of review on appeal of a criminal conviction is whether, after viewing the evidence in a light favorable to the verdict, any rational trier of fact could have found the defendant guilty of the crime charged beyond a reasonable doubt. The defendant no longer enjoys the presumption of innocence, and we determine only the sufficiency of the evidence. We do not weigh the evidence or assess witness credibility.

(Footnotes omitted.) *Johnson v. State*, 289 Ga. App. 435 (657 SE2d 333) (2008).

So viewed, the evidence shows that on the morning of May 2, 1993, a Lowndes County Sheriff's officer found a woman's partially clothed body lying on the side of Orr Road in Lowndes County. The victim was holding a pair of pants in her left hand. Strewn along the road up to a quarter mile from the body the officer found a purse, military ID card, ATM card, a $20 and $5 bill, and some loose change. A warrant was subsequently issued for Davis's arrest in connection with the victim's death.

On July 30, 1994, an officer with the Kent Police Department in Kent, Washington, stopped Davis for speeding, and a computer check showed that Davis was subject to the Georgia arrest warrant. Davis fled the scene on foot, but was apprehended a short time later. After being apprised of his *Miranda* rights, Davis gave an oral statement to Kent police officers regarding events in Valdosta, Georgia, the

previous year. Approximately an hour later, Davis made a recorded statement.

Davis told the officers that Jermaine Bryant had picked him up at Davis's girlfriend's apartment in Valdosta. Sometime after they "rode off talking," they spotted the victim walking down the road, and Bryant asked her if she needed a ride. The victim, who appeared to be intoxicated, declined the offer at first but eventually got into the back seat. Bryant pulled out a gun and told the victim, "give it up, bitch," which Davis understood to be a demand for money. Davis punched Bryant, hoping that he would drop the gun. When that failed, Davis jumped out of the car and ran away. He heard a single gunshot when he jumped out of the car.

Davis later told a Lowndes County officer that he had gotten into the back seat with the victim, and that, after she began to rub on his leg and kiss him, they had sexual intercourse until she pushed him off. According to this statement, he later asked Bryant to pull the car over so that he could use the restroom. After Davis got out of the car and went into the bushes, he heard two gunshots. When he ran back over to the car he found the victim lying down on the ground with her panties down, and he then ran from the scene.

Davis related a third version of events to an inmate in the Lowndes County jail. Davis told the inmate that he had been driving the car, and that the "other guy" got into the back of the car with a gun and raped the victim. The two men then swapped places, and Davis got into the back seat and had sex with the victim. Bryant subsequently took the victim out of the car and shot her, after which Davis fled the scene. Davis also told Bryant's girlfriend, Valencia Johnson, that he and Bryant had picked up the victim and planned to rob her.

Davis was indicted for murder, rape, kidnapping, and armed robbery, and four counts of possession of a firearm during the commission of a crime. At the July 1996 trial, the medical examiner testified that the victim died as a result of gunshot wounds to the right side of the head and the left side of the neck. The medical examiner also performed a "rape kit" on the victim's body, and then submitted swabs taken from the vaginal area to the Georgia Bureau of Investigation laboratory for DNA testing. The genetic material in the rape kit was positive for Bryant and negative for Davis.

The jury found Davis guilty of rape, kidnapping, armed robbery, and three counts of possession of a firearm during the commission of a crime. The jury found Davis not guilty of murder and one count of possession of a firearm during the commission of a crime. Davis appeals following the denial of his motion for a new trial.

1. Davis claims that the trial court committed reversible error by denying his motion for a directed verdict of acquittal. "It is well-

settled in Georgia that there is no error in denying a defendant's motion for a directed verdict of acquittal where the evidence is sufficient to authorize a rational jury to find a defendant guilty beyond a reasonable doubt." (Citation omitted.) *Brown v. State*, 269 Ga. 67, 68-69 (1) (495 SE2d 289) (1998).

Davis does not deny that evidence showed that the victim was raped, kidnapped, and robbed, all at gunpoint. See OCGA §§ 16-6-1 (rape); 16-5-40 (kidnapping); 16-8-41 (armed robbery); 16-11-106 (possession of a firearm during commission of a crime); *Dasher v. State*, 281 Ga. App. 326, 329 (1) (b) (636 SE2d 83) (2006) (although victim got into the car voluntarily, once the defendant refused to let her out of the car and held her against her will, a kidnapping occurred). Davis argues, however, that because Bryant had control of the car and the gun, which he tried to make Bryant drop, and because only Bryant's genetic material was found in the victim, the evidence was insufficient to show that he committed the crimes. We disagree.

Any person who "[i]ntentionally aids or abets in the commission of the crime" is a party thereto and may be charged with and convicted of the crime. OCGA § 16-2-20 (a), (b) (3). That Davis aided and abetted in the commission of the crimes was supported by evidence that Davis and Bryant were willing companions; that they stopped to pick up the victim; that Davis and Bryant intended to rob the victim; that Davis assisted Bryant by driving the car at or about the time Bryant was raping the victim; and that Davis then swapped places with Bryant so he could have sexual intercourse with the victim. Thus, any rational trier of fact could conclude beyond a reasonable doubt that Davis was a party to the crimes for which he was convicted. See *Norris v. State*, 220 Ga. App. 87, 89 (2) (469 SE2d 214) (1996) ("criminal intent may be found by the jury upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted") (citation and punctuation omitted); *Robinson v. State*, 208 Ga. App. 528, 529 (1) (430 SE2d 830) (1993) (although appellant claimed that there was no evidence he either had a gun or knew that his partner was going to use a gun, the jury was authorized to conclude that appellant aided and abetted the commission of the armed robbery). The trial court did not err in denying Davis's motion for a directed verdict.

2. (a) Davis contends that he did not make a knowing and intelligent waiver of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), because he was suffering from the effects of pepper spray; because his emotional state of mind prevented him from making an intelligent waiver; because a written and not oral waiver was required; and because officers' failure to

reread him his *Miranda* rights before taking the second statement precluded its admission. We disagree.

Evidence adduced at the *Jackson-Denno* hearing showed that after Davis fled from the traffic stop, officers used pepper spray in the course of taking him into custody. An officer flushed out Davis's eyes with water to soothe the resulting irritation, and he was moved into a cell. After Davis asked to speak with officers, two officers went into the cell and one of the officers informed Davis of his *Miranda* rights, including the right to remain silent and the right to a lawyer. The officer then asked Davis if he understood those rights and whether, having those rights in mind, he wished to talk to the officers. Davis responded affirmatively. Approximately 45 minutes passed between the time that the officer flushed out Davis's eyes and the time that the officer informed Davis of his *Miranda* rights.

The officers heard Davis's oral statement at approximately 3:00 p.m., and then obtained a recorded statement at approximately 4:10 p.m. Davis was not asked to sign a written waiver of his rights with respect to either statement. The officers did not inform Davis of his *Miranda* rights before he gave the second statement, although they asked Davis beforehand if he still wanted to talk and if he wanted to waive his rights, and Davis responded that he did.

The trial court did not abuse its discretion in finding that, under the totality of circumstances, Davis's statements were freely and voluntarily made following a waiver of his *Miranda* rights. "Factual and credibility determinations of this sort will not be reversed by the appellate court unless clearly erroneous." (Citations omitted.) *Spain v. State*, 243 Ga. 15, 16 (1) (252 SE2d 436) (1979). Although Davis may have been suffering the continued effects of pepper spray during the course of the interview, he was capable of waiving his rights. Testimony showed that at the time Davis knew where he was and what he was doing, that he made appropriate responses to questions asked by the officers, and that he did not appear to be under the influence of any intoxicant or drug. See *LaRue v. State*, 171 Ga. App. 371 (319 SE2d 468) (1984) (where appellant gave his statement approximately 12 hours after being shot and undergoing surgery, previous physical and emotional trauma did not make him incapable of waiving his rights). Davis was not required to waive his *Miranda* rights in writing. See *Spain*, supra, 243 Ga. at 16 (1) (oral waiver sufficient). Nor were the officers required to specifically re-apprise him of those rights at the time of the second statement, which was made approximately an hour after the first interview as part of a continuing interrogation. See *Carswell v. State*, 279 Ga. 342, 343 (2) (a) (613 SE2d 636) (2005) (it was of no consequence if *Miranda* rights were not read to appellant in second interview, which was part of series of interviews over a span of 12 to 14 hours); *McKenzie v. State*,

187 Ga. App. 840, 844 (4) (371 SE2d 869) (1988) (in view of continuous nature of interrogation, failure to repeat *Miranda* warnings did not render inadmissible the defendant's statement that was made one hour after initial interview was concluded).

(b) Davis asserts that during the second interview, an officer improperly coerced his testimony by promising a favorable recommendation to the court if he gave a statement the officer deemed truthful. "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50.

The interviewing officer testified that in the past he had told suspects that, if they gave a statement he believed truthful, he was "not opposed to" telling the judge about their cooperation, and that he could have told Davis this as well. Even if the officer had indicated to Davis that he would tell the judge about Davis's cooperation, "implied promises to tell the judge of defendant's cooperation, did not constitute the kind of 'hope of benefit' which is contemplated by . . . OCGA § 24-3-50." (Citation and punctuation omitted.) *Tucker v. State*, 231 Ga. App. 210, 214 (1) (c) (498 SE2d 774) (1998). The trial court did not err in finding that there were no impermissible threats, force, or promises made to Davis in order to induce the statement.

3. Davis contends that the trial court erred in failing to give his request to charge the jury on his theory of the case. We disagree.

The trial court failed to give Davis's request to charge "that even if the accused made a statement that could be construed as constituting approval of the Co-Defendant's criminal offense, such approval, if it does not amount to encouragement does not render the accused as a party of the offense charged." The evidence does not show that Davis made an approving statement as to Bryant's conduct which was at issue in the case. See generally *Stocks v. State*, 153 Ga. App. 72, 73 (2) (264 SE2d 552) (1980) (the court properly refused a request to charge not applicable to the facts of the case); compare *Parker v. State*, 155 Ga. App. 617, 618 (2) (271 SE2d 871) (1980) (defendant not party to offense of marijuana solely because of statement to co-defendant to "go ahead and sell him that bag") (punctuation omitted). Whether Davis was a party to the crime was a central issue for the defense, but the trial court adequately charged the jury on this principle, including that the mere presence of the defendant at the scene of a crime, even coupled with knowledge not amounting to encouragement or participation, is insufficient to convict him as a party to that crime. "The charge as a whole was not prejudicial to defendant and it is no longer necessary to give the exact language of requests to charge when the same principles are fairly given to the jury in the general charge of the court." (Citation

and punctuation omitted.) *Phelps v. State*, 245 Ga. 338, 340-341 (6) (265 SE2d 53) (1980). We find no error.

4. Davis claims that the trial court erred in admitting hearsay evidence over his objection. Again, we disagree.

In an effort to show a prior inconsistent statement of Davis's friend, Debra Washington, the prosecutor asked a sheriff's investigator, "what did [Washington] say that Calvin Davis said about who was driving the vehicle?" The investigator responded, "Davis said he was driving the car."

Although Davis maintains that the investigator's response was inadmissible hearsay, his defense attorney actually objected to this answer on the grounds that it was not responsive to the question.[1] Following the objection, the trial court asked the jury to retire and ruled that the witness could not testify to what Davis said unless she heard him make the statement. After the jury returned, the prosecutor repeated the question, and the witness answered, "Ms. Washington told me that Davis told her that he was driving the car. . . ." Defense counsel made no objection.

We fail to find any error by the trial court. The State's attempt to establish a prior inconsistent statement by Washington was not challenged by the defense. See generally *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). The trial court addressed defense counsel's objection as to the witness's initial answer, and defense counsel did not renew the objection after the witness revised her response. Davis complains that the trial court did not strike the witness's improper answer or instruct the jury to disregard it, but defense counsel did not ask that these things be done. "Acquiescence completely deprive[s] [him] of the right to complain further." (Citations and punctuation omitted.) *McKibbons v. State*, 216 Ga. App. 389, 392 (4) (455 SE2d 293) (1995).

5. Davis claims that the State failed to fulfil its obligation to provide the defense with all of witness Johnson's statements during discovery, and that the trial court improperly allowed Johnson's testimony. We disagree.

"OCGA § 17-16-7 requires the prosecution to produce [prior to trial] for the opposing party any statement of any witness that is in the possession, custody, or control of the state or prosecution that relates to the subject matter concerning the testimony of the witness." (Punctuation omitted.) *Cox v. State*, 242 Ga. App. 334, 338 (7) (528 SE2d 871) (2000).

---

[1] Defense counsel initially objected to the line of questioning on the grounds that it called for hearsay, but after the trial court instructed the jury on prior inconsistent statements, defense counsel agreed that the prosecutor's question as to what Washington said that Davis said was proper.

In her testimony, Johnson agreed that, in a conversation some-time after the murder, Davis told her that the victim "was out walking and [Davis and Bryant] picked her up and planned to rob her." Defense counsel objected on the grounds that "I've not been supplied such statement. I've been supplied certain statements by this witness, but some later statement[s] [have] not been supplied to me." After an unrecorded bench conference, Johnson again testified that Davis told her about a plan to rob the victim. Defense counsel did not secure a ruling from the trial court as to his objection, nor did he object to the continuation of Johnson's testimony regarding her prior statement. Nor does Davis show by the record any evidence that the State did not produce Johnson's statement as required by OCGA § 17-16-7. Accordingly, Davis fails to show any error by the trial court.

6. Davis claims that the trial court erred in charging the law of conspiracy in this case because conspiracy was not alleged by the indictment. However, "[i]t is not error to charge on the subject of conspiracy when the evidence tends to show a conspiracy, even if a conspiracy is not alleged in the indictment." (Citation omitted.) *Holmes v. State*, 272 Ga. 517, 519 (6) (529 SE2d 879) (2000). The evidence, which showed that Davis and Bryant set out together and formed a plan to rob the victim, raised the inference of a conspiracy.

Davis argues that the principle stated in *Holmes* shows a change in the law from the time of his trial, but we disagree. See *Jones v. State*, 243 Ga. 820, 830 (11) (256 SE2d 907) (1979). *Brockington v. State*, 178 Ga. App. 533 (343 SE2d 708) (1986), relied on by Davis, is limited to the "particular facts and circumstances of [the] case." Id. at 534. We concluded that the trial court erred in charging the jury on conspiracy as a lesser included crime because the jury acquitted Brockington of the object of the conspiracy, and the conspiracy was therefore a separate crime which must be charged in the indictment. Id. Here, the jury found Davis guilty of crimes charged in the indictment. We find no error.

7. Davis claims that he received ineffective assistance of trial counsel.[2] Davis argued to the trial court that his trial counsel was ineffective in (i) failing to subpoena "an expert doctor for the DNA test"; (ii) failing to argue to the jury that evidence, particularly the items found strewn along the side of the road, had been tampered with, or to cross-examine witnesses about whether those items had been moved; (iii) failing to object to the prosecutor's questioning of

---

[2] Davis's appellate counsel maintains that he cannot find a good faith basis for asserting ineffective assistance, but refers us to arguments made by Davis in the hearing on motion for new trial.

an investigator about previous statements made by witness Washington; and (iv) failing to subpoena his ex-girlfriend.

In order to show ineffective assistance of counsel, it was Davis's "burden to demonstrate that trial counsel's performance was deficient and that, but for that deficient performance, it is reasonably probable that the result of the trial would have been different." (Citation and punctuation omitted.) *Johnson v. State*, 275 Ga. App. 21, 25 (7) (619 SE2d 731) (2005). Davis failed to make a proffer of the purported DNA expert's testimony or his ex-girlfriend's testimony, nor did he show that evidence was tampered with. Accordingly, as to these claims, he failed to establish a reasonable probability that the result of the trial would have been different but for his trial counsel's alleged deficient performance. See *McDaniel v. State*, 279 Ga. 801, 802 (2) (c) (621 SE2d 424) (2005) (where defendant fails to proffer testimony of an uncalled witness, he cannot prove that there is a reasonable probability that the trial would have ended differently).

As to the prosecution's questioning of the police investigator about Washington's statements, Davis was concerned with defense counsel having allowed prejudicial and misleading testimony to come before the jury. Specifically, Davis argued "Debra Washington['s] statement never stated Calvin Davis was in the back seat with the victim, and attorney should have objected to that." The transcript shows that the prosecutor referenced Washington as having stated that, according to Davis, Bryant was in the back seat. Davis does not show that his defense counsel had a valid objection on the grounds that the prosecutor had misrepresented Washington's statement. "[T]rial counsel's failure to make a meritless objection does not constitute ineffective assistance of counsel." (Citation omitted.) *Martin v. State*, 281 Ga. 778, 781 (3) (a) (642 SE2d 837) (2007). Davis therefore fails to show that the trial court erred in determining that he had not received ineffective assistance of counsel.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 26, 2008 —
RECONSIDERATION DISMISSED JULY 17, 2008.

*James E. Jarvis, Jr.*, for appellant.
*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney*, for appellee.