## S12A0400. LEWIS v. THE STATE.
(731 SE2d 51)

HINES, Justice.

Willie Henry Lewis appeals his convictions for the malice murders of Xavier Dinkins and Kejaun Webb, as well as a variety of other crimes that occurred over a four-day crime spree.[1] For the reasons that follow, we affirm in part, vacate in part, and remand.

Construed to support the verdicts, the evidence showed that Lewis stole a dark colored Jeep Cherokee in DeKalb County on October 5, 2001, confronting the vehicle's owner, Robert Chandler,

---

[1] The crimes occurred October 7-10, 2001. On November 16, 2001, a Fulton County grand jury returned a 28-count indictment, naming Lewis in each count; as to some counts, Marquez Miguel Heard was named as a co-indictee, as to other counts, Michael Noble was named a co-indictee. The indictment charged Lewis with: the malice murders of both Dinkins and Webb; the felony murders of Dinkins and Webb while in the commission of aggravated assault; the aggravated assaults of Dinkins, Webb, Travis Reid, Antwon Cox, Herbert Cox, Walter Williams, Freddie Perdue, Shavez Givens, Shanta Roman, and Jaboori Denson; the armed robberies of Herbert Cox, Williams, Perdue, Roman, and Denson; the attempted armed robberies of Dinkins, Reid, Antwon Cox, and Givens; three counts of possessing a firearm during the commission of the felony of armed robbery; and two counts of possessing a firearm during the commission of the felony of aggravated assault. Lewis was tried alone before a jury October 13-17, 2003, and found guilty of all charges. He was sentenced to two consecutive terms of life in prison for the malice murder counts; as to the remaining counts, he was sentenced to various prison terms totaling 165 years, and the guilty verdicts for the crimes of felony murder and the aggravated assaults of Dinkins and Webb either merged with the malice murders or were vacated by operation of law. See *Malcolm v. State,* 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Lewis moved for a new trial on November 17, 2003, which was denied on February 23, 2005. Lewis filed a notice of appeal on March 31, 2005; his appeal was docketed in this Court on August 19, 2005, and dismissed as untimely on January 17, 2006. On July 31, 2009, Lewis, acting pro se, filed an extraordinary motion for new trial, and on August 7, 2009, again acting pro se, filed a "motion for out of time appeal and appointment of counsel." On February 9, 2010, the trial court entered an order appointing appellate counsel for Lewis, nunc pro tunc November 19, 2009. Lewis filed a motion for an out-of-time appeal on April 27, 2011, which was granted by the trial court on June 24, 2011. Lewis's second notice of appeal was filed on July 18, 2011, his appeal was docketed in this Court for the January 2012 term, and submitted for decision on the briefs.

with a chrome .357 revolver. On October 7, 2001, Lewis accosted Travis Reid and Xavier Dinkins while they were walking along a street. He pointed a .357 chrome revolver at the two men and told them to lie on the ground. Lewis searched them, and, when he discovered that neither man had any money, said that they had three seconds to run before he would shoot. Both men ran; Lewis began firing, and Dinkins was fatally struck. Lewis then ran toward the Jeep Cherokee he had stolen from Chandler. Later that day, police officers responded to a report of a shooting at an apartment complex. There they found Kejuan Webb, fatally shot. After the shooting, a witness saw a man carrying a .357 chrome revolver running to a Jeep Cherokee like that stolen from Chandler. A bullet recovered from this crime scene was later identified as having been fired from a chrome .357 caliber revolver taken from Lewis's home.

On October 8, 2001, Lewis approached Antwon Cox and his younger brother, Herbert Cox, as they walked from Morris Brown College in Fulton County. Lewis produced a .357 caliber chrome revolver and told both brothers to lie on the ground. He searched the Cox brothers and found that Herbert had $30, but that Antwon had no money. Lewis told Antwon that he should thank Herbert for the fact that Herbert had some money, because Lewis had shot a person the day before because that victim did not have any money. Nonetheless, Lewis pointed the revolver at Antwon and pulled the trigger. However, the weapon did not fire, and Lewis fled.

On October 9, 2001, Freddie Perdue had just left class at Morris Brown College and was standing outside a dormitory on a nearby college campus with Walter Williams and Shavez Givens. Lewis and another man, both carrying chrome revolvers, approached and told the men that they would rob them. The assailants searched the victims' pockets; Perdue had only a cell phone, a business card holder, and a hair brush. Lewis told Perdue he would shoot him "anyway," and as Perdue tried to run, Lewis shot him in the chest. Williams tried to flee, but was also shot by Lewis.

On October 10, 2001, Shanta Roman and Jabouri Denson were walking along a street when Lewis and Michael Noble approached them. Both men brandished pistols. Denson and Roman ran until they came to a building and a fence; they threw money to the ground, the assailants picked up the money, and Lewis fired at the two victims, saying he did so in retaliation for them making him run after them. Noble was captured shortly thereafter by police officers.

Police officers recovered Chandler's abandoned Jeep Cherokee; Lewis's fingerprints were found inside. Officers also executed a search warrant at Lewis's residence and recovered clothing consistent with victims' accounts of the perpetrator's clothing. Police also

recovered two firearms: a .357 caliber chrome revolver and a .22 caliber chrome revolver. Ballistics tests revealed that the .357 revolver fired bullets that were recovered from the body of Dinkins, the scene of Webb's killing, and the scene of the attempted shooting of Denson and Roman.

1. During jury voir dire, a prospective juror testified that he believed that he and the prosecuting attorney were second cousins. Lewis contends that the prospective juror was thus disqualified from service and should have been struck for cause. See OCGA § 15-12-135 (a).[2] "But the mere fact that the juror was disqualified, standing alone, is not sufficient to require the grant of a new trial. The accused must go further and show that neither he nor his counsel had knowledge of such disqualification." *Williams v. State*, 206 Ga. 107, 109 (2) (55 SE2d 589) (1949).

> The disqualification of a juror . . . may be expressly or impliedly waived by a party having cause to complain, and if expressly or impliedly waived, it is conclusively presumed that no harm or benefit to either party resulted from the disqualification, and where it appears that the party having cause to complain either knew of the relationship or could have discovered it by the timely exercise of ordinary diligence, and remained silent, that party will be presumed to have waived the disqualification.

*Reid v. State*, 204 Ga. App. 358, 360 (2) (419 SE2d 321) (1992).

The record reveals that, despite the prospective juror's statement in open court, Lewis never sought to have him dismissed for cause. Thus, Lewis has waived his right to raise the issue on appeal.

2. The search of Lewis's home yielded a .22 caliber chrome revolver. Lewis objected to the admission of this pistol into evidence on the ground that no testimony showed that a .22 caliber pistol was used in any of the crimes, it was not relevant, and that the admission was sought for "the purpose of prejudicing the accused." However,

---

[2] OCGA § 15-12-135 reads:

(a) All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law. Relationship more remote shall not be a disqualification.

(b) Notwithstanding subsection (a) of this Code section, any juror, irrespective of his relationship to a party to the case or his interest in the case, shall be qualified to try any civil case when there is no defense filed unless one of the parties to the case objects to the related juror.

possession of a firearm does not impute bad character. *Henderson v. State*, 272 Ga. 621, 622 (2) (532 SE2d 398) (2000). In any event, as the State contended at trial, the .22 caliber chrome revolver was admissible because at least one witness had reported that, as to some of Lewis's crimes, he worked in concert with another assailant who also held a chrome revolver, and this .22 caliber chrome pistol was thus relevant as it could have been provided by Lewis to an accessory. See *Tyler v. State*, 251 Ga. 381, 382 (2) (306 SE2d 263) (1983).

3. Lewis contends that the trial court incorrectly admitted hearsay evidence from three witnesses.

(a) Over Lewis's hearsay objection, Rocky Phillips, a security guard at a college campus near where the crimes against the Cox brothers took place, was permitted to testify as to what one of the Cox brothers told him regarding the crimes. The report was made to Phillips shortly after the crimes were committed; Phillips was not able to name which brother told him what had occurred, but he had spoken only to one of them, and it was "the one that wasn't shot." Antwon Cox testified prior to Phillips's testimony that Lewis had attempted to shoot him, but Lewis's revolver did not fire, and that he had given a report to a campus security guard. Antwon Cox also testified that only one man had accosted him and his brother on October 8, 2001; Phillips testified that on October 7, 2001 [sic], Antwon Cox told him that "two or three" men had attempted to rob him and his brother.

At trial, the State asserted that Phillips's testimony was admissible as part of the res gestae. See OCGA § 24-3-3; *Inman v. State*, 281 Ga. 67, 70 (3) (b) (635 SE2d 125) (2006) ("A victim's statement made within minutes of a crime and to an officer responding to his call for help is admissible under the res gestae exception."). In any event, regardless of whether Phillips's testimony came within the res gestae exception to the hearsay rule, given the differences between Antwon Cox's testimony and that of Phillips, the fact that Phillips's testimony did not directly implicate Lewis, and in light of the overwhelming evidence implicating Lewis in the crimes alleged, it is highly probable that the admission of this evidence did not contribute to the verdicts. See *Edmond v. State*, 283 Ga. 507, 510-511 (6) (661 SE2d 520) (2008); *Heard v. State*, 274 Ga. 196, 199 (6) (552 SE2d 818) (2001).[3]

(b) Lewis also made a hearsay objection to the testimony of Atlanta Police Officer Davis regarding what Williams told Davis at

---

[3] At trial, Lewis did not raise any objection to Phillips's testimony based on a violation of Lewis's right of confrontation. See *Treadwell v. State*, 285 Ga. 736, 739 (1) (a) (684 SE2d 244) (2009), overruled on other grounds, *Clay v. State*, 290 Ga. 822, 838 (3) (B) (725 SE2d 260) (2012).

the scene shortly after Williams was shot. The trial court permitted the admission of the evidence under the res gestae exception to the hearsay rule. This was not error; the statement was made minutes after the shooting in the midst of the chaos of the crime scene, while emergency services were provided to Williams and Perdue. See *Sanford v. State*, 287 Ga. 351, 354-355 (2) (695 SE2d 579) (2010); *Morgan v. State*, 275 Ga. 222, 225 (5) (564 SE2d 192) (2002). In any event, the content of Davis's testimony regarding what Williams told him was substantially the same as that to which Williams testified directly at trial; of the two assailants who accosted Williams, Perdue, and Givens, it was the man who had gold teeth who shot Williams and Perdue. Accordingly, any erroneous admission of Davis's testimony was harmless as the evidence was cumulative, and thus it is highly probable that Davis's testimony did not contribute to the verdicts. See *Johnson v. State*, 289 Ga. 22, 27 (4) (709 SE2d 217) (2011); *Morris v. State*, 280 Ga. 179, 180 (2) (a) (626 SE2d 123) (2006); *White v. State*, 273 Ga. 787, 791 (4) (546 SE2d 514) (2001).

(c) Marquez Miguel Heard was named as a co-indictee with Lewis as to the crimes against Williams, Perdue, Givens, and the Cox brothers. Over objection, the trial court allowed Jesse Jones to testify that Heard told him that Heard and Lewis had committed robberies at Morris Brown College. Lewis was not present when Heard made this statement to Jones.

The State contends that the statement was admissible under OCGA § 24-3-5[4] as the statement of a co-conspirator; Lewis contends that no conspiracy between him and Heard was shown so as to make the statement admissible.

> Under OCGA § 24-3-5, the State must make a prima facie showing of the existence of the conspiracy, without regard to the declarations of the co-conspirator, in order to admit his out-of-court declarations. Conduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy.

*Heard v. State*, 287 Ga. 554, 559-560 (5) (697 SE2d 811) (2010) (Citations and punctuation omitted). Noble testified that, in his presence, Lewis told Heard to watch a local television news story and that Heard should "tell [Lewis] if it reminded him of something"; the

---

[4] OCGA § 24-3-5 reads:
 After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all.

news story was about a shooting at the college campus where Williams and Perdue had been shot, and during which time Lewis acted in concert with another. There was also evidence that Antwon Cox had identified Heard in a police photographic array as a perpetrator of some of the crimes. Even without evidence of an express agreement between Heard and Lewis, there was sufficient evidence of Heard's involvement in a conspiracy with Lewis to commit the robberies at Morris Brown College and adjacent areas so as to authorize the admission of Jones's evidence. Id.

4. The trial court instructed the jury on the law regarding the use of testimony of an accomplice. Lewis contends that it was error for the court to fail to include an accompanying instruction regarding the use of hearsay testimony. However, Lewis did not submit a request, written or otherwise, for such a charge, and thus there was no error in failing to give any such instruction. See *Davis v. State*, 285 Ga. 176, 177-179 (2) (674 SE2d 879) (2009); *Webb v. State*, 284 Ga. 122, 127 (6) (663 SE2d 690) (2008).

The court also instructed the jury that, in considering the reliability of testimony regarding witness identification of a perpetrator, the jury could consider the "level of certainty shown by the witness about his or her identification." This Court disapproved such an instruction in *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005). Although the State argues that, as Lewis's trial occurred before the *Brodes* opinion was issued, the holding in that opinion does not apply, this Court has consistently applied *Brodes* to appeals in which the trial had concluded before *Brodes* was issued. See *McKenzie v. State*, 284 Ga. 342, 345 (3) (a) (667 SE2d 43) (2008); *Smith v. State*, 284 Ga. 17, 23 (5) (663 SE2d 142) (2008); *Valdivia v. State*, 283 Ga. 140, 140-141 (3) (657 SE2d 230) (2008); *Conway v. State*, 281 Ga. 685, 688 (2) (642 SE2d 673) (2007); *White v. State*, 281 Ga. 20, 22 (3) (635 SE2d 720) (2006). See also *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992), regarding the "pipeline" approach to appellate review after changes in criminal procedure.[5]

But, *Brodes* does not require reversal. Significant evidence corroborated the eyewitness identification, notably the physical evidence taken from Lewis's home and the testimony and admitted out-of-court statements of his criminal confederates. See *Woodruff v. State*, 281 Ga. 235, 236 (2) (637 SE2d 391) (2006). In fact, identification from eyewitnesses did not play a significant role in the State's

---

[5] Lewis preserved this issue for appellate review by reserving his objections to the jury instructions. *Taylor*, supra. But see OCGA § 17-8-58, effective July 1, 2007.

case; only Williams specifically identified Lewis in court,[6] the other witnesses only provided descriptions of the perpetrators. Accordingly, we conclude that it is highly probable that giving the erroneous jury instruction did not contribute to the verdicts, and the error was thus harmless. Id. See also *Hicks v. State*, 287 Ga. 260, 264 (4) (695 SE2d 195) (2010); *Rabie v. State*, 286 Ga. App. 684, 687 (2) (649 SE2d 868) (2007).

5. Lewis contends that the evidence was insufficient to convict him of the crimes against Antwon and Herbert Cox, noting that Antwon Cox did not identify Lewis as the perpetrator during the trial, and that it was shown at trial that Antwon Cox did not identify Lewis in a pre-trial photographic lineup in which Lewis appeared. However, during the confrontation, Lewis stated to Antwon Cox that he had shot a person the day before who did not have any money, which corresponded to Reid's testimony about the crimes of the previous day. And, shooting his victims when he was frustrated in his robbery attempts was consistent with Lewis's behavior toward Perdue, Denson, and Roman. Antwon Cox also identified the pistol used in the crimes against him and his brother, which had been recovered from Lewis's residence, and which other victims had identified as being used during Lewis's crime spree. The evidence was sufficient to enable a rational trier of fact to find Lewis guilty beyond a reasonable doubt of all the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

6. Lewis further contends that the trial court's sentences were improper as to two counts of possession of a firearm during the commission of a felony. Count 16 of the indictment charged Lewis with possession of a firearm during the commission of armed robbery on October 8, 2001, i.e., the armed robbery of Herbert Cox, which was Count 12 of the indictment. The court's sentence states that Lewis is to serve five years in prison for Count 16, which is "to follow" the sentences for Counts 12 and 15; Count 15 is the aggravated assault of Antwon Cox. As to Count 12, Lewis received a 15-year sentence; as to Count 15, he received a ten-year sentence, "to run concurrent" with the sentence on Count 12. Lewis contends that, as Counts 12 and 15 have different lengths, but are to run concurrently, his sentence on Count 16 which is "to follow" those two sentences must, in fact, follow only the shorter ten-year sentence imposed for Count 15. Lewis cites no authority for this conclusion, only intoning that "the rule of lenity" requires it.

---

[6] Perdue's identification of Lewis consisted of responding to questions concerning "the defendant."

> The rule of lenity applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment. [Cit.] However, the rule does not apply when the statutory provisions are unambiguous. [Cit.]

*Banta v. State,* 281 Ga. 615, 617 (2) (642 SE2d 51) (2007). See also *State v. Jackson,* 287 Ga. 646 (697 SE2d 757) (2010). There is no ambiguity here; OCGA § 16-11-106 (b) specifies that one who is convicted of possession of a firearm during the commission of a felony receive a sentence of five years in prison "to run consecutively to any other sentence which the person has received," which this Court has construed as meaning that the sentence for possession of a firearm "be served consecutively only to the underlying felony for that offense." *Busch v. State,* 271 Ga. 591, 594 (523 SE2d 21) (1999). The underlying felony as to Count 16 was specified in the indictment as the armed robbery of Herbert Cox, found in Count 12, and the sentence for possession of a firearm during the commission of that crime is properly designated by the trial court as to be served consecutively to the 15-year prison term imposed for Count 12; the concurrent, shorter ten-year term imposed for Count 16 does not alter that.

Similarly, Count 23 charged Lewis with the possession of a firearm during the commission of armed robbery on October 9, 2001, i.e., the armed robberies of Walter Williams and Freddie Perdue, charged in Counts 17 and 18, respectively. As to Count 23, Lewis was sentenced to five years in prison "to follow" the prison terms imposed for Count 18 *and Count 22*. Count 18 alleged the armed robbery of Freddie Perdue, and Count 22 alleged the aggravated assault of Shavez Givens; Lewis received a prison sentence of 20 years for Count 18 and as to Count 22, a prison sentence of 20 years "to follow" the sentence imposed for Count 18. As noted, Count 18 was specified as an underlying felony of Count 23, but Count 22 was not. However, as entered, the trial court's sentence would require that, before Lewis begins the sentence for possession of a firearm during the commission of a felony, he must serve the sentence for the underlying felony of armed robbery from Count 18, *and then* the sentence for the aggravated assault of Givens, which was *not* set forth as an underlying felony in Count 23. This is contrary to this Court's holding in *Busch,* supra. Accordingly, the sentence imposed for possession of a firearm during the commission of a felony as set forth in Count 23 must be vacated and the case remanded to the trial court for resentencing.

7. Trial counsel for Lewis filed a motion for new trial, raising the general grounds. At the hearing on the motion, new counsel for Lewis

(i.e., first appellate counsel) stated that he had amended the motion to include an assertion of ineffective assistance of trial counsel. However, no such pleading appears in the record. Nonetheless, during the hearing on the motion for new trial, first appellate counsel questioned both trial counsel and Lewis about certain matters. In this appeal, Lewis is represented by yet another attorney (i.e., second appellate counsel) who contends that both trial counsel and first appellate counsel were ineffective.

In order to prevail on his claim of ineffective assistance of trial counsel, Lewis must show both that trial counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. Similarly, in order to prevail on his claim of ineffective assistance of first appellate counsel, Lewis must show both that first appellate counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Arrington v. Collins*, 290 Ga. 603, 604 (724 SE2d 372) (2012).

Lewis now claims that trial counsel was ineffective by virtue of: (a) not moving to excuse a prospective juror, see Division 1, supra; (b) failing to challenge the sufficiency of the evidence against Lewis as to the crimes against Antwon and Herbert Cox, see Division 5, supra; and (c) not moving to correct the sentences addressed in Division 6, supra. However, at the hearing on his motion for new trial, first appellate counsel for Lewis did not question trial counsel on these matters, or argue them to the court. This Court has stated that claims of ineffective assistance of trial counsel must be raised at the earliest practicable moment, and thus must be raised

> *before appeal* if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising the issue at a later time. [Cits.]

*Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996) (Emphasis in original).

> In *Wilson v. State*, 286 Ga. 141, 144-145 (4) (686 SE2d 104) (2009), we held that a defendant cannot resuscitate procedurally barred claims of ineffective assistance of trial counsel simply by bootstrapping them to a claim of ineffectiveness of appellate counsel.

*Rogers v. State*, 290 Ga. 401, 409 (5) (721 SE2d 864) (2012). Accordingly, even if the claims addressing trial counsel's representation had been embraced in a pleading filed below, they are procedurally barred.

Lewis also asserts that his first appellate counsel was ineffective in that, at the hearing on Lewis's motion for new trial, he failed to question Lewis regarding what the content of his testimony would have been had he chosen to testify at trial; first appellate counsel only asked Lewis about the decision to testify and the manner in which that decision was made. This Court has

> recognized that claims of ineffective assistance of appellate counsel which are premised on other claims that are not procedurally barred may be raised on appeal by new appellate counsel. [Cit.] Assuming that Appellant's claim of ineffective [first] appellate counsel is properly raised because it is premised on a claim not procedurally barred, a remand to the trial court for an evidentiary hearing would be necessary unless we can "determine from the record that the two-prong test for ineffectiveness cannot be met. [Cits.]" [Cit.]

*Rogers,* supra at 409 (5). This Court cannot determine from the record before it whether Lewis is unable to meet the standard for ineffective assistance of first appellate counsel. Assuming that the issue of trial counsel's ineffective assistance on the ground of failing to call Lewis to testify was properly raised in the trial court, if first appellate counsel had questioned Lewis about what his trial testimony would have been, it might have helped establish that claim. The trial court's order does not specifically address the issue, and the case must be remanded for a hearing on the issue of ineffective assistance of first appellate counsel. *Wilson,* supra at 145.

*Judgments affirmed in part and vacated in part and case remanded with direction. All the Justices concur.*

DECIDED JUNE 25, 2012.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker*, *Christopher M. Quinn*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Jason C. Fisher*, Assistant Attorney General, for appellee.