**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 14, 2013**

# In the Court of Appeals of Georgia

A12A2151. BROWN v. THE STATE.                           DO-082 C

DOYLE, Presiding Judge.

Joseph Brown appeals from the denial of his motion for new trial following his conviction by a jury of armed robbery[1] (three counts), hijacking a motor vehicle[2] (four counts), possession of a firearm during the commission of a felony[3] (four counts), aggravated assault,[4] theft by receiving stolen property,[5] fleeing and attempting to

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-44.1 (b).

[3] OCGA § 16-11-106 (b).

[4] OCGA § 16-5-21 (a) (1).

[5] OCGA § 16-8-7 (a).

elude a police officer,[6] and reckless driving.[7] He contends that (1) the trial court erred by giving the jury an improper instruction on the level of certainty of witnesses' identification of him, (2) the trial court erroneously denied his request for a hearing on the suggestiveness of pre-trial identification procedures, (3) trial counsel was ineffective, and (4) the evidence was insufficient to support the verdict. For the reasons that follow, we affirm.

Construed in favor of the verdict,[8] the evidence shows that Brown perpetrated several offenses against multiple victims over the course of three months in 2005. In July, Jamie Penn got off of work at approximately 2:00 a.m. and drove to an automated teller machine to withdraw money. As she returned to her car, a green 1997 Volkswagon Jetta, Brown confronted her with a black semiautomatic pistol and demanded her money. She refused and briefly struggled with Brown, who then pointed his gun at her and asked for her car keys. Brown then drove off in her car with $440 of Penn's cash. Penn called police from a nearby convenience store. A week later, police located the Jetta abandoned by the side of the road, with the

---

[6] OCGA § 40-6-395 (b) (5) (A).

[7] OCGA § 40-6-390 (a).

[8] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

windows newly tinted and the radio removed. At trial, a friend of Brown's testified that Brown brought a green Jetta to his house and applied tinting film to the windows.

Later in July 2005, Sara Best was returning home to her apartment complex from her mother's late one evening. After Best parked her car, Brown approached her, briefly spoke to her, and then attacked her, demanding her car keys. Best started screaming, and Brown fired a shot into the air from a black semiautomatic pistol. Brown then pointed the gun at two nearby witnesses and at Best while he unsuccessfully attempted to use Best's keys to open the car next to hers. Best ran to her apartment, and Brown fled without taking her car, jumping into a friend's car who had driven him to the area to find a car to steal. At trial, Brown's friend described picking up Brown from the scene as well as the black 9 millimeter pistol Brown used.

In August 2005, Wilber Holmes was washing his green Chevrolet Blazer late one evening, when Brown approached him, pointing a black semiautomatic pistol and demanding Holmes's money and car keys. Holmes stalled him to get a better look at his face, and Brown and an accomplice eventually robbed Holmes of his wallet and the Blazer. Holmes's vehicle was later recovered by police, and Brown's fingerprints were found on the vehicle.

In early September 2005, Joseph Inman was returning to his room at a motel late one night, when Brown appeared at his vehicle, held a black semiautomatic pistol to his back, and demanded his keys and wallet. Brown threatened to shoot Inman, took his keys and cash, and sped away in Inman's 2003 black Nissan 350 Z. Inman contacted police, who issued a "be on the lookout" call over the police radio, and an officer spotted the vehicle and executed a traffic stop. The vehicle stopped briefly but then sped off as the officer exited his police cruiser. The officer gave chase at a high rate of speed, and shortly thereafter, the Nissan left the road, flattened two mailboxes, snapped a utility pole, and crashed into a tree. Brown was trapped inside the driver's seat, and his passenger was attempting to crawl over Brown when the officer intervened and arrested the passenger. Brown was extricated from the wreckage and taken to the hospital.

Brown was charged with the offenses arising from these events, and after the trial court entered an order of nolle prosequi on certain counts, he was found guilty by a jury of all remaining counts based on the testimony of the victims and other evidence. After a hearing, the trial court denied his motion for new trial, giving rise to this appeal.

1. Brown contends that the trial court erred by instructing the jury that "the level of certainty shown by the witness[es] about [their] identification" of Brown was among the factors to be considered in assessing the reliability of the eyewitnesses' identification. As Brown correctly points out, the Supreme Court of Georgia has found such instructions to be harmful error when the only evidence of guilt is eyewitness testimony:

> In light of the scientifically-documented lack of correlation between a witness's certainty in his or her identification of someone as the perpetrator of a crime and the accuracy of that identification, and the critical importance of accurate jury instructions as "the lamp to guide the jury's feet in journeying through the testimony in search of a legal verdict," we can no longer endorse an instruction authorizing jurors to consider the witness's certainty in his/her identification as a factor to be used in deciding the reliability of that identification. Accordingly, we advise trial courts to refrain from informing jurors they may consider a witness's level of certainty when instructing them on the factors that may be considered in deciding the reliability of that identification.[9]

Based on the Supreme Court's holding in *Brodes*, the trial court erred by instructing the jury about the eyewitnesses' level of certainty.

---

[9] *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005).

But reversal is not required if it is highly probable that the error did not contribute to the judgment.[10] Here, the crimes against Penn were corroborated by testimony from Brown's friend that he saw him driving a green Jetta, that he applied tint to the windows (which was depicted in photographic exhibits showing the new tint), and that Brown said he had stolen the Jetta and abandoned it. The crimes against Best were corroborated by testimony from Brown's codefendants that they were with him when they dropped him off at Best's apartment, that they heard screaming and a gunshot, and that they picked up Brown when he was unsuccessful in taking the car parked next to Best's car. The crimes against Holmes were corroborated by testimony from Brown's accomplice that he helped Brown take a green Chevrolet Blazer and that Brown used a black pistol. Also, Brown's fingerprints were found inside the Blazer, which belonged to Holmes. Finally, the crimes against Inman were corroborated by the fact that Brown was found by police in the wreckage of Inman's car, which had just been stolen from Inman.

Based on the record before us, including undisputed physical evidence and identification of Brown as the perpetrator by witnesses who were well acquainted with him, there was ample evidence – other than from victims unacquainted with

[10] See *Lewis v. State*, 291 Ga. 273, 278 (4) (731 SE2d 51) (2012).

6

Brown – linking Brown to the crimes. Further, the trial court instructed the jury on the State's burden to prove Brown's identity beyond a reasonable doubt. Under these circumstances, it is highly probably that the erroneous instruction did not contribute to the verdicts.[11]

2. Brown next contends that the trial court erred by denying his request for a hearing outside the jury's presence to assess the suggestiveness of pre-trial identification procedures used by victims Holmes and Inman. Brown did not seek a pre-trial hearing, but instead sought a conference outside the presence of the jury to evaluate the standards in *Neil v. Biggers*.[12] According to those standards, "[it] is error to allow testimony concerning a pre-trial identification of the defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of

---

[11] See id. at 278 (4); *Conway v. State*, 281 Ga. 685, 689 (2) (642 SE2d 673) (2007) (noting that *Brodes* addressed identification by witnesses to whom the perpetrator was not previously known and no harmful error occurred when the witnesses were well acquainted with the defendant); *Rabie v. State*, 286 Ga. App. 684, 687 (2) (649 SE2d 868) (2007) (other evidence linked defendant to the crime).

[12] 409 U. S. 188, 199-200 (III) (93 SC 375, 34 LE2d 401) (1972) ("[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, . . . and the length of time between the crime and the confrontation.").

7

misidentification."[13] Instead of holding the mid-trial conference, the trial court denied Brown's request and allowed him to challenge the identification procedure on cross-examination.

Brown relies upon *Perry v. New Hampshire*,[14] which addressed the question of whether a Due Process Clause violation occurs when a trial court does not hold a preliminary hearing to evaluate a pre-trial identification procedure. In that case, the U. S. Supreme Court addressed a narrow factual scenario whereby the victim spontaneously identified the defendant as he stood alone with police in a parking lot.[15] The defendant argued that this amounted to an impermissibly suggestive single-person lineup, and the trial court violated his due process right by denying his pre-trial motion to exclude it. The Supreme Court granted certiorari to address the "question [of] whether the Due Process Clause requires a trial judge to conduct a preliminary assessment of the reliability of an eyewitness identification made under

---

[13] *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999). See *Brooks v. State*, 285 Ga. 246, 248-249 (3) (674 SE2d 871) (2009).

[14] __ U. S. __ (132 SC 716, 181 LE2d 694) (2012).

[15] See *Perry*, 132 SC at 721 (I) (A).

suggestive circumstances *not arranged by the police*."[16] The Court held that a preliminary hearing was not constitutionally mandated because the lineup, however suggestive, was not arranged by police and therefore not a result of police misconduct.[17]

In the present case, with respect to Holmes, he testified that he made extra efforts during his encounter with Brown to delay Brown, get "a good stare at his face . . . [, and keep] it in my mind exactly what he looked like." Brown concedes that police then presented Holmes with an array of 2231 photos, from which he picked two photos of Brown and one other, which Holmes ruled out. A subsequent photo lineup containing the identified images was signed by Holmes, but in light of the process Holmes engaged in to identify Brown from more than two thousand photos, this did not result in an impermissibly suggestive procedure.

> An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, "This

---

[16] (Emphasis supplied.) Id. at 723 (I) (B).

[17] See id. at 730 (II) (C) ("the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement").

9

is our suspect." The fact that the accused may be of a different race or ethnicity does not in and of itself make the identification procedure impermissibly suggestive, especially when there are other individuals in the line-up having roughly the same characteristics and features as the accused.[18]

Based on the record before us, the process engaged in by Holmes was not unduly suggestive, and therefore, there was no police misconduct triggering a potential due process violation under *Perry*. "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary."[19]

With respect to Inman, Brown's argument fails for the same reason. Inman viewed a photographic lineup approximately one-and-a-half hours after the robbery. This was a six-person photographic lineup that contained men of the same race and age with similar complexion and hair style. Inman identified Brown based on the

---

[18] (Punctuation and citation omitted.) *Humphrey v. State*, 281 Ga. 596, 597 (1) (642 SE2d 23) (2007).

[19] *Armour v. State*, 290 Ga. 553, 554 (2) (a) (722 SE2d 751) (2012).

10

lineup. This procedure reveals no undue suggestiveness created by police and no due process violation under *Perry*.[20]

3. Brown contends that he received ineffective assistance of counsel when his trial counsel failed to seek pre-trial exclusion of the in-court identifications made by Best and Penn because they were impermissibly suggestive and inherently unreliable. Under *Strickland v. Washington*,[21] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[22] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[23]

---

[20] See id. See also *Williams v. State*, 290 Ga. 533, 536 (2) (a) (722 SE2d 847) (2012) (stating in dicta that lineup containing "six African-American males of similar appearance" was not unduly suggestive); *In the Interest of L. R.*, 219 Ga. App. 755, 757 (3) (a) (466 SE2d 653) (1996) (appellate court's examination of photographs supported conclusion that the photographic lineup procedures were not unduly suggestive).

[21] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[22] See id. at 687-688, 694 (III) (A)-(B).

[23] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

11

It is well-settled under Georgia law that the suggestiveness and reliability standard under *Neil v. Biggers* "is irrelevant to the admissibility of in-court identifications. Challenges to in-court identifications must be made through cross-examination."[24] Therefore, any pre-trial motion to exclude the in-court identifications would have been meritless, and Brown cannot meet his burden under *Strickland* on that basis.[25]

4. Finally, Brown argues that the evidence was insufficient to support the verdict. When reviewing the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal

---

[24] (Footnote omitted.) *Hunt v. State*, 279 Ga. 3, 4 (2) (608 SE2d 616) (2005).

[25] See *Porter v. State*, 292 Ga. 292, 294 (3) (a) (__ SE2d __) (2013) ("[C]ounsel's failure to make a meritless objection cannot constitute evidence of ineffective assistance").

12

conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[26]

(a) As to the crimes involving Best, Penn, Holmes, and Inman, as well as evading police, the evidence sufficed to support his conviction for the reasons explained in Division 1.

(b) Regarding the crime of theft by receiving stolen property, Brown argues that there was insufficient evidence that he received the pistol knowing that it was stolen.[27] But there is evidence that the pistol belonged to Jeremy Privett's father, and Jeremy had taken it without permission from his father's closet. Brown, who was a friend of Privett, was with Privett when he took the gun from his father's closet, and when it subsequently was stolen from Brown's car at a social cookout they attended. Brown knew of the theft of the gun, and the pistol Brown used in the robberies was a black Beretta 9 millimeter pistol with the same serial number as the black Beretta 9 millimeter pistol stolen from Privett's home. Based on this evidence, the jury was

---

[26] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[27] OCGA § 16-8-7 (a) defines the offense as follows: "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen . . . 'Receiving' means acquiring possession or control . . . ."

13

authorized to conclude that Brown knowingly received or retained the pistol in violation of OCGA § 16-8-7. Accordingly, this enumeration fails.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*