**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 21, 2013**

# In the Court of Appeals of Georgia

A13A0051. LINDSEY v. THE STATE.

MILLER, Judge.

Following a jury trial, Marcus Antonio Lindsey was convicted of two counts of armed robbery (OCGA § 16-8-41 (a)). Lindsey appeals from the denial of his motion for new trial, contending that (1) the evidence did not support his convictions; (2) the trial court erred in admitting improper identification testimony; (3) the trial court incorrectly instructed the jury on identification testimony; (4) the trial court erred in admitting his taped statement; and (5) the trial court improperly played his co-defendant's taped statement. For the reasons that follow, we affirm Lindsey's convictions.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the trial evidence shows that on June 21,

2002, the first victim left work around 1:30 to 2:00 a.m., and she drove to a Burger King on Washington Road in Richmond County. The second victim, who was a friend, followed the first victim in his vehicle and parked next to her in the Burger King parking lot. The second victim got out of his vehicle and stood next to the driver's side of the first victim's car to discuss getting something to eat.

While the victims were talking, Carlos McCain, Lindsey and a third individual were driving around in a blue Honda Civic when they spotted the two victims in the Burger King parking lot. The group parked the Civic next to the second victim's car. One of the men came up to the second victim with what appeared to be a gun, demanded the victim's money and moved the second victim away from the first victim's car. The second victim took $400 - $600 in cash, his checkbook and his work keys out of his pockets and dropped them on the ground. Meanwhile, an assailant, who was wearing a plaid shirt, pointed a gun at the first victim's face through the passenger side window and said, "Give me your money." The first victim handed the man her purse, which contained approximately $1,000 in cash. While the man went through the first victim's purse, the third assailant approached the first victim through the driver's side window, pressed a metal object into her face, and repeatedly told her

2

to give him money. All three assailants—McCain, Lindsey and the third individual—got into the Civic and drove off.

Soon thereafter, an officer from the Richmond County Sheriff's Office, was driving westbound on Washington Road near the Interstate 20 bridge when he noticed a blue Civic with no headlights coming towards him in the opposite direction. The car was the same Honda Civic that McCain had borrowed on June 20, 2002, and Lindsey was one of the passengers in the car. When the officer turned around to pull over the Civic, the driver of the Civic pulled into a convenience store and drove around to the back of the store. The driver then stopped the car, all three occupants jumped out, and they ran into the woods.

The officer called for back-up, and the responding officers searched for the three assailants. Meanwhile, the Civic was inventoried, and an officer found the first victim's purse and the second victim's checkbook inside the vehicle. Approximately 15 to 20 minutes later one of the responding officers found Lindsey about 30 yards from the car. Lindsey was lying down next to a tree with brush or leaves covering him. Lindsey was identified as one of the assailants who jumped out of the Civic and fled, and he was arrested for obstruction. When Lindsey was booked into the jail that morning, he was wearing a plaid shirt.

Later that morning, a Richmond County investigator interviewed Lindsey. The investigator read Lindsey his *Miranda* rights, and Lindsey waived his rights in writing. During the interview, Lindsey told the investigator that he was present during the robbery, he exited the car and he approached the two victims to distract them while the other participants got ready to rob the victims. Lindsey also said that he spoke to the first victim and told her to calm down because she was screaming and crying. Lindsey said that they were stopped by police a few minutes after they drove away from the robbery scene. Lindsey and the others exited the car and fled.

Based on information that Lindsey provided during the interview, the investigator obtained a photograph of McCain and showed it to Lindsey. Lindsey identified McCain as one of the men in the car with him during the robbery. The investigator then retrieved a tape recorder and took Lindsey's recorded statement, during which Lindsey confirmed that he got out the car to distract the two victims. The investigator subsequently interviewed McCain. McCain confirmed that he, Lindsey and Lindsey's brother were involved in the armed robbery.

1. Lindsey contends that the evidence was insufficient to support his conviction. We disagree.

"A person commits the offense of armed robbery when, with intent to commit theft, he … takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). Furthermore, "[i]n accordance with OCGA § 16-2-20 (a), any person concerned in the commission of a crime is a party to it and may be convicted as a principal." (Citation and punctuation omitted.) *Bryson v. State*, 316 Ga. App. 512, 514 (1) (729 SE2d 631) (2012).

Here, the evidence showed that both victims were robbed by men driving a Honda Civic who were armed with a gun or what appeared to be a gun. Lindsey admitted that he distracted the victims while the other participants robbed them. When he was arrested, Lindsey was wearing a plaid shirt, and the first victim testified that one assailant was wearing a plaid shirt. Additionally, Lindsey and the other participants ran from the Civic shortly after an officer attempted to stop the car for driving without headlights. Lindsey's flight from the scene provided an additional circumstance from which the jury could infer his guilt. See *Woodruff v. State*, 233 Ga. 840, 842 (1) (213 SE2d 689) (1975) (holding that "evidence of flight may be admitted as one of a series of circumstances from which guilt may be inferred") (Punctuation omitted). Moreover, the first victim's purse and the second victim's checkbook were

5

found in the Civic, from which Lindsey was seen exiting and fleeing. Thus, when viewed in the light most favorable to the jury's verdict, the evidence was sufficient to authorize the jury to convict Lindsey as a principal to the armed robbery of both victims.

2. Lindsey contends that the trial court erred in admitting improper identification testimony. We do not agree.

Lindsey argues that neither of the victims identified him as a participant in the armed robbery, and that the State's identification evidence was based on his and McCain's statements which should have been excluded. As set forth in Divisions 4 and 5 below, both Lindsey's and McCain's taped statements were properly admitted. Accordingly, this enumeration of error presents nothing for us to review.

3. Lindsey contends that the trial court erred in charging on identification, when the trial court instructed the jury to evaluate the "level of certainty shown by the witness." Again, we disagree.

In *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005), the Georgia Supreme Court disapproved of the pattern jury instruction on eyewitness identification authorizing jurors to consider a witness's certainty in his/her

6

identification as a factor to be used in deciding the reliability of that identification. Although Lindsey's trial occurred before the *Brodes* opinion was issued, the Georgia Supreme Court has consistently applied *Brodes* to appeals in which the trial had concluded before *Brodes* was issued. See *Lewis v. State*, 291 Ga. 273, 278 (4) (731 SE2d 51) (2012).

Nevertheless, *Brodes* does not require reversal. Unlike *Brodes*, other evidence besides eyewitness identification testimony linked Lindsey to the robbery. See *Lewis*, supra, 291 Ga. at 278 (4); *Rabie v. State*, 294 Ga. App. 187, 195 (5) (b) (668 SE2d 883) (2008). Notably, Lindsey admitted that he participated in the robbery by distracting the victims while the other participants robbed them, and after the robbery, he ran from the car which was used in the robbery and in which officers found items taken from the two victims. Moreover, eyewitness identification did not play a significant role in the State's case, because the victims only provided limited descriptions of the perpetrators and neither victim identified Lindsey in court. See *Lewis*, supra, 291 Ga. at 278-279 (4). Accordingly, it is highly probable that giving the erroneous jury instruction did not contribute to the verdict, and the error was thus harmless.

4. Lindsey contends that the trial court erred in admitting his statement to the investigator. Specifically, Lindsey argues that his taped statement was not free and voluntary because the investigator did not reread his *Miranda* rights, following a significant time-gap between the signing of the waiver of rights form and the beginning of the taped interview. We discern no error.

> In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964) hearing will be upheld on appeal.

(Citation omitted). *Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010).

Here, the evidence at the *Jackson v. Denno* hearing showed that Lindsey was taken into custody for obstruction shortly before 3:00 a.m. The investigator testified that approximately six hours later, he interviewed Lindsey about the armed robbery in this case. Prior to advising Lindsey of his rights, the investigator got basic information from Lindsey, including his birthday, address, physical description and the fact that Lindsey had a high school education. The investigator then gave Lindsey

his *Miranda* warnings, Lindsey indicated that he understood all of his rights, he appeared to be coherent, and he did not appear to be under the influence of drugs or alcohol. Lindsey then signed a waiver of counsel form, which set forth his rights and specifically provided that no promises or threats were made to induce him to sign the waiver.

Prior to making his taped statement, Lindsey told the investigator that he was present during the robbery, he approached the first victim and told her to calm down because she was screaming. The investigator spoke with Lindsey for approximately an hour and a half before he recorded Lindsey's statement. During the unrecorded portion of the interview, the investigator encouraged Lindsey to cooperate and tell the truth, and he let Lindsey know that he could be identified by witnesses. The investigator testified, however, that he did not threaten Lindsey or promise him anything for giving the statement. After listening to the taped interview, the trial court ruled that Lindsey's statement was freely and voluntarily given.

Lindsey did not testify at the *Jackson v. Denno* hearing, and no evidence showed that he was coerced or threatened during the unrecorded portion of his interview with the investigator. Moreover, in light of the continuous nature of the interrogation, the investigator was not required to specifically re-apprise Lindsey of

9

his *Miranda* rights before he made the taped statement. See *Carswell v. State*, 279 Ga. 342, 343 (2) (a) (613 SE2d 636) (2005); *Davis v. State*, 292 Ga. App. 782, 785 (2) (666 SE2d 56) (2008). Accordingly, the trial court did not abuse its discretion in finding that, under the totality of the circumstances, Lindsey's taped statement was freely and voluntarily made following a waiver of his *Miranda* rights.

5. Lindsey contends that the trial court violated his confrontation right when it admitted McCain's taped statement after McCain took the stand and refused to provide meaningful testimony regarding the armed robbery. We disagree.

"The Confrontation Clause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant. . . . [S]tatements made to police officers during an investigation qualify as testimonial." (Citations and punctuation omitted.) *Jackson v. State*, 291 Ga. 22, 24 (2) (727 SE2d 106) (2012). Nevertheless,

> when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court. The Clause does not bar admission

10

of a statement so long as the declarant is present at trial to defend or explain it.

(Citations and punctuation omitted). *Crawford v. Washington*, 541 U.S. 36, 59 (IV) (124 SCt 1354, 158 LE2d 177) (2004).

Here, Lindsey fails to show that the confrontation clause barred admission of McCain's taped statements to police officers. Notably, McCain testified at Lindsey's trial that he committed the armed robbery, and Lindsey was with him. McCain admitted giving a taped statement to the investigator about the robbery, although he refused to answer the State's questions about his statement. While Lindsey argues that he was denied the right to confront McCain, he expressly declined the opportunity to cross-examine McCain. Moreover, while Lindsey now argues that McCain refused to testify, at trial he specifically argued that McCain did not refuse to testify, and that the prosecutors could have done more at trial to elicit testimony from McCain. Compare *Soto v. State*, 285 Ga. 367, 370 (2) (b) (677 SE2d 95) (2009) (admission of a witness's prior statement violated the defendant's confrontation right where the witness "shut down" in the midst of direct examination and refused to answer further questions posed by either the prosecution or the defense). Since McCain was present at trial to defend or explain his statement, and Lindsey declined the opportunity to

11

cross-examine him, the Confrontation Clause did not bar admission of McCain's taped statement.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*