NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 17, 2026

S26A0086.  SIMMS v. THE STATE.

PINSON, Justice.

Michael Eric Simms was convicted of felony murder and other crimes in connection with the shooting death of Seadee Karram Jones.[1] One of Simms's contentions on appeal is that his conviction

---

[1] Jones was killed on July 20, 2015. On November 20, 2015, a Fulton County grand jury indicted Simms for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), possession of a firearm during the commission of a felony (Count 5), cruelty to children in the third degree (Count 6), and possession of a firearm by a convicted felon (Count 7). Simms was tried by a jury from February 13 to 16, 2017. The jury found Simms guilty on all counts. The trial court sentenced Simms to life in prison without the possibility of parole for Count 2, five years in prison for Count 5, five years of probation for Count 7, and one year of probation for Count 6, all to be served consecutively. The remaining counts merged for sentencing or were vacated by operation of law. Given the disposition of this appeal, we express no opinion about whether the trial court erred by sentencing Simms on the felony murder count and purporting to have the malice murder count vacated by operation of law. See, e.g., *Lucky v. State*, 286 Ga. 478, 480 (2010) ("When the jury returns guilty verdicts on both felony murder and malice murder charges in connection with the death of one person, it is the felony

must be reversed because one of the jurors, F.S., was not a citizen of the United States. The trial court denied Simms's motion for new trial on that ground, based on its finding that Simms had not preserved the claim because "no objection was made at trial." But failing to object to an ineligible juror does not mean that issue is not preserved unless the party also "knew of the [juror's ineligibility] or could have discovered it by the timely exercise of ordinary diligence, and remained silent." *Lewis v. State*, 291 Ga. 273, 275 (2012) (citation omitted). Because the trial court did not apply that standard in concluding that this claim was not preserved, the judgment is vacated and the case remanded for the trial court to apply the proper standard in the first instance.

---

murder conviction, not the malice murder conviction[,] that is simply surplusage, and stands vacated by operation of law." (cleaned up)).

Simms filed a timely motion for new trial on February 24, 2017, which he amended three times through new counsel on July 28, 2019, November 17, 2019, and June 9, 2020, and then amended three more times through different appellate counsel on January 23, 2023, March 3, 2023, and May 26, 2023. The trial court held two evidentiary hearings and then denied the motion, as amended, on August 11, 2023. Simms filed a timely notice of appeal. More than two years later, the trial record was transmitted to this Court. The case was then docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

1. The record shows the following circumstances relevant to Simms's claim about the non-citizen juror.

F.S.'s citizenship was not discussed at trial. During voir dire, F.S. told the prosecutor that he had lived in Fulton County for 11 years and that he had moved there because "[m]y daddy was here." The prosecutor asked where F.S. was from originally, and F.S. answered, "Mexico." The prosecutor then immediately turned the questioning over to the defense. Defense counsel did not ask about F.S.'s citizenship. F.S. was ultimately seated on the jury.

A few months after trial, Simms's trial counsel got a call from another attorney who was representing F.S. in an unrelated matter. As trial counsel testified at the motion-for-new-trial hearing, F.S. had told that other attorney that he had served on a jury, and so that other attorney, who knew that F.S. was not a United States citizen, relayed the information to trial counsel. Simms's appellate counsel then included a claim about a non-citizen juror in Simms's amended motion for new trial.

At the motion-for-new-trial hearing, F.S. testified that he had

3

received a jury summons and questionnaire that asked, among other things, whether he was a United States citizen. F.S. filled out and submitted the questionnaire online, responding truthfully that he was not a United States citizen. Later, F.S. called the jury-services division at the court to ask about his jury service. He was told that he "still need[ed] to come" even though he was not a citizen.

Other witnesses at the motion-for-new-trial hearing shed more light on F.S.'s jury service. The court's jury clerk testified about some of the general practices of her office. According to the clerk, when Fulton County residents fill out the online juror questionnaire, that information is sent to a third-party vendor, which then compiles the information for the court. On the day of jury service, when prospective jurors are selected from the pool and sent to the courtroom, the jury clerk's office also sends to the court a hard-copy "bio" for each prospective juror that includes the questionnaire information. The juror bios are typically given to court staff or a deputy "for distribution." The jury clerk was clear, however, that she did not know what happened in Simms's specific case. Simms's trial happened

roughly 20 months before the jury clerk started in her position in October 2018. And the specific juror bios from Simms's trial are not in the record.

Simms's trial counsel also testified. Trial counsel said that juror bios at the time of Simms's trial (in February 2017) did not include as much information as they did "today" (counsel was testifying in May 2023). She testified that counsel received "very little back then" and "a lot more now." And counsel said that at Simms's trial she did not receive all the information from the jurors' questionnaires. She testified that the citizenship question was "not on our sheet that we get."

2. By statute, jurors in Georgia must be United States citizens. See OCGA § 15-12-40.1(b) (providing that when the Department of Driver Services sends to the Council of Superior Court Clerks a list of all Georgia residents who are at least 18 years old and have a driver's license or state identification card, for purposes of compiling the state-wide master jury list, the Department "shall exclude persons … who have been identified as not being citizens of the United

5

States").[2] We have held that "automatic reversal" of a verdict may be required when the jury selection process involves a violation of an "essential and substantial" provision of a jury selection statute, and the violation had a "discernible impact on the composition of the grand or petit jury." *Sinkfield v. State*, 311 Ga. 524, 528 (2021) (quotation marks and emphasis omitted). And we have said that an "essential and substantial" provision of a jury selection statute is violated when the violation "impacted who was chosen for the array— that is, in every case in which there was good reason to doubt that a particular juror would have been selected for the array without the violation...." *State v. Towns*, 307 Ga. 351, 355 (2019) (quotation marks and emphasis omitted). In short, our precedent raises a serious question whether a verdict from a jury that includes a juror who is not a United States citizen — like the verdict in Simms's case — requires automatic reversal. See *State v. Embert*, 322 Ga. 199, 208 (2025) (service on a jury by an ineligible juror renders any verdict

---

[2] Although this Code Section refers only to the "council," the definition section of this Chapter makes clear that any reference to "council" in the Chapter means the "Council of Superior Court Clerks of Georgia." OCGA § 15-2-1(4).

decided by the jury voidable).

All of that said, a trial by a jury that includes an ineligible juror is a defect that may be "waived" by the parties. Id. at 207. In this context, that waiver may be express, or, relevant here, it may be implied, if a party "either knew of the [juror's ineligibility] or could have discovered it by the timely exercise of ordinary diligence, and remained silent." *Lewis*, 291 Ga. at 275 (citation omitted). See also *Williams v. State*, 206 Ga. 107, 109 (1949) ("[T]he mere fact that the juror was disqualified, standing alone, is not sufficient to require the grant of a new trial. The accused must go further and show that neither he nor his counsel had knowledge of such disqualification."). So a court considering whether a party has "impliedly waived" an objection to an ineligible juror must determine not only whether the party failed to object, but also whether the party knew that the juror was ineligible, and if not, whether the party could have learned of the juror's ineligibility through the exercise of ordinary diligence.

There is no indication here that the trial court applied that standard. The court concluded that Simms had waived his ineligible-

7

juror claim merely because Simms did not object at trial — that is, because Simms "remained silent." See *Lewis*, 291 Ga. at 275. But the court neither made any findings about nor otherwise addressed whether Simms or his counsel knew that F.S. was not a citizen, or whether they could have discovered that fact through the "timely exercise of ordinary diligence." See id. Because the trial court failed to address that required inquiry, it did not apply the complete legal standard in concluding that Simms failed to preserve this juror claim for review. And applying the wrong legal standard is an abuse of a trial court's discretion. See *State v. Brinkley*, 316 Ga. 689, 690 (2023).

The court's judgment denying a new trial on this claim is therefore vacated. And because we are generally a court of review, not of first view, see, e.g., Ga. Const. of 1983, Art. VI, Sec. VI, Para. II ("The Supreme Court shall be a court of review…."); *Drennon v. State*, 314 Ga. 854, 871 (2022) (remanding case for fact-finding on one of defendant's claims on appeal), we leave it to the trial court to determine in the first instance whether Simms or his counsel knew that

8

F.S. was not a citizen or could have learned about it through the exercise of ordinary diligence, and thus whether Simms waived his juror-ineligibility claim. See *State v. Sims*, 322 Ga. 769, 778 (2025) (vacating trial court's judgment and remanding for proceedings when the trial court did not apply the proper legal standard when excluding evidence under OCGA § 24-4-403); *State v. Mickel*, 321 Ga. 751, 759 (2025) (vacating portions of trial court's order concluding that police officers lacked probable cause to arrest defendant and remanding for additional fact-finding and analysis). If, after applying the standard discussed above, the trial court determines that the claim is preserved, the court should address the claim on the merits.[3]

*Judgment vacated and case remanded. All the Justices concur, except LaGrua, J., disqualified.*

---

[3] In light of this disposition, we do not reach Simms's other claims on appeal.